UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD BISSAU MENDY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-4443** |
| **STEELE PROTECTIVE SERVICES, LLC** | **SECTION: "P" (5)** |

## ORDER AND REASONS

Before the Court is an Appeal[1] by Edward Bissau Mendy of a judgment of the United States Bankruptcy Court for the Eastern District of Louisiana, dismissing Mendy's involuntary bankruptcy petition against Steele Protective Services, LLC,[2] as well as the bankruptcy court's award of attorney's fees and costs.[3] After careful consideration of the record on appeal, the briefs of the parties, and the applicable law, it is ordered that the judgments of the bankruptcy court are AFFIRMED.

## BACKGROUND

On January 28, 2021, Mendy and Steele executed an employment contract that lies at the heart of this bankruptcy action and related state court litigation.[4] On July 20, 2022, alleging he was owed "unpaid and liquidated wages" of approximately $355,000, Mendy filed an involuntary petition against Steele under Chapter 7 of the United States Bankruptcy Code.[5] Steele filed a motion to dismiss Mendy's petition, arguing Mendy's claim was the subject of a bona fide dispute as to both liability and amount.[6] Steele also argued Mendy filed the involuntary petition in bad faith and requested an award of attorney's fees and costs.[7]

---

[1] R. Doc. 1.
[2] R. Doc. 2-1 at 187.
[3] R. Doc. 4.
[4] R. Doc. 2-1 at 65.
[5] *Id.* at 1–4.
[6] *Id.* at 6–11.
[7] *Id.*

After a hearing,[8] the bankruptcy court dismissed Mendy's involuntary petition, finding no reasonable factfinder could conclude that Mendy could meet the standing requirement under 11 U.S.C. § 303(b) for an involuntary petition against Steele. The bankruptcy court's decision to dismiss Mendy's petition was based, in part, on the existence of a pending lawsuit in Louisiana state court between Mendy and Steele, which the bankruptcy court concluded involved the claims Mendy had asserted in his involuntary bankruptcy petition.[9] The bankruptcy court found this to be fatal to Mendy's ability to show there was no bona fide dispute,[10] and the bankruptcy court also found Mendy's involuntary petition had been filed in bad faith because, before filing the involuntary petition, Mendy had threatened Steele with the bankruptcy filing as a settlement tactic in the state court litigation by describing the involuntary petition as a "nuclear option" he might employ because he had nothing to lose by "imploding the company."[11] Finding Mendy's action "reek[ed] of bad faith,"[12] the bankruptcy court gave the parties an opportunity to supplement the record with evidence of Steele's fees and costs,[13] and, after taking the fee and cost issue under advisement,[14] the bankruptcy court awarded fees and costs to Steele in the amount of $5,502.59.[15]

On appeal, Mendy alleges eleven assignments of error, but these assignments fall into three basic categories: (1) the bankruptcy court erred in finding there was a bona fide dispute; (2) the bankruptcy court erred in finding bad faith; and (3) the bankruptcy court erred in its decision to award fees and costs, awarded excessive fees and costs, and failed to offset these against the amount Steele allegedly owed Mendy.[16]

---

[8] R. Doc. 3.
[9] *Id.*
[10] *Id.* at 10-14.
[11] *Id.* at 16.
[12] *Id.*
[13] R. Doc. 2-1 at 187.
[14] *Id.* at 245.
[15] R. Doc. 4.
[16] R. Doc. 8 at 2–3.

## LAW AND ANALYSIS

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).[17] Bankruptcy appeals are generally taken in the same manner as appeals in civil actions are taken from the district courts to the courts of appeals, and in the time provided by Rule 8002 of the Federal Rules of Bankruptcy Procedure.[18] A federal district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error,[19] and it reviews discretionary decisions of the bankruptcy court for abuse of discretion.[20] A bankruptcy court abuses its discretion only when its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence.[21] Whether a debt is subject to a bona fide dispute is a question of fact and is reviewed for clear error,[22] while an award of attorney's fees and costs is reviewed for abuse of discretion.[23]

***Whether the bankruptcy court was correct in finding a bona fide dispute***

Forcing a debtor into an involuntary bankruptcy proceeding is a severe remedy, and Congress, therefore, placed restrictions on the ability of creditors to bring involuntary proceedings.[24] Under 11 U.S.C. § 303(b), an involuntary proceeding must be brought by three or more creditors holding qualifying claims, but in cases in which the alleged debtor has fewer than twelve creditors, a single creditor may file the petition.[25] Even so, a creditor does not have standing to file a petition under § 303(b) if the claim is "the subject of a bona fide dispute as to liability or amount."[26] To determine whether a bona fide dispute exists under § 303(b), the Fifth Circuit

---

[17] 28 U.S.C. § 158(a)(1); *In re Berman-Smith*, 737 F.3d 997, 1000 (5th Cir. 2013).
[18] 28 U.S.C. § 158(c)(2).
[19] *In re Nat'l Gypsum Co.*, 208 F.3d. 498, 504 (5th Cir. 2000).
[20] *Matter of Mendoza*, 111 F.3d 1264, 1270 (5th Cir. 1997).
[21] *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008).
[22] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 655 (5th Cir. 2014).
[23] *In re First City Bancorporation of Tex., Inc.*, 282 F.3d 864, 867 (5th Cir. 2002).
[24] 11 U.S.C. § 303.
[25] 11 U.S.C. § 303(b).
[26] *Id*.

follows an objective standard,[27] and courts in the Fifth Circuit must determine whether the litigated claim directly challenges the liability or amount of the debt.[28]

In Mendy's Chapter 7 petition against Steele, he claimed unpaid and liquidated wages of $355,000.[29] But, just two months before he filed his bankruptcy petition, Mendy filed an action in Louisiana state court against Steele and its principal, Toney M. Steele.[30] In Mendy's state court action, he sought injunctive relief and damages, including the damages sought in his involuntary bankruptcy petition.[31] Steele, arguing in support of its motion to dismiss, argued the claims Mendy was advancing in the involuntary proceeding formed part of the claims in the pending, and, according to Steel, vigorously contested, state court lawsuit.[32]

Mendy maintains on appeal that the bankruptcy court did not look at the "evidence and character of the state court claim" in finding a bona fide dispute.[33] This Court disagrees and finds Mendy's assertion in this regard to be without merit. Based upon the evidence before it, the bankruptcy court concluded Mendy's state court lawsuit, in which Mendy sought unpaid wages, encompassed claims Mendy was asserting in his involuntary petition, and found that no reasonable fact-finder could find that Mendy could satisfy his burden of showing he had standing under § 303(b) to file the involuntary petition against Steele.[34]

It is axiomatic under §§ 303(b)(1) and (2) of the Bankruptcy Code, that an involuntary petition must be filed by a creditor who is the holder of a claim that is not contingent as to liability

---

[27] *In re Hunt*, No. 18-7237, 2019 WL 651672, at *3 (E.D. La. Feb. 14, 2019) (citing *In re Sims,* 994 F.2d 210, 221 (5th Cir. 1993)).
[28] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659 (5th Cir. 2014).
[29] R. Doc. 2-1 at 3.
[30] *Id.* at 130.
[31] *Id*.
[32] *Id.* at 6.
[33] R. Doc. 8 at 21.
[34] R. Doc. 3 at 13.

or the subject of a bona fide dispute as to liability or amount.[35] In deciding whether a bona fide dispute exists, the bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.[36] A petitioning creditor has the burden of establishing a prima facie case that no bona fide dispute exists, after which the putative debtor must present evidence to rebut the prima facie case.[37]

In this case, as the bankruptcy court found, there was the "red flag" of pending litigation in state court between the same parties that were in the bankruptcy case when the involuntary petition was filed.[38] Although pending litigation does not automatically establish the existence of a bona fide dispute, pending litigation between the parties in an involuntary action can strongly suggest a bona fide dispute.[39] And, courts routinely consider the existence and character of pending, but unresolved, litigation when determining whether there is a bona fide dispute.[40]

Having reviewed the record of the bankruptcy proceeding,[41] it is obvious to this Court that Mendy and Steele had a vigorous disagreement regarding what, if anything, Mendy was owed by Steele under the contract they had executed. This dispute was the source of a great deal of disagreement between Mendy and Steele before the filing of the state court action, and the dispute between Mendy and Steele continued to the date of the filing of Mendy's involuntary petition, which is the date on which the existence of a bona fide dispute must be determined.[42] The dispute

---

[35] *In re Baron*, 593 F. App'x 356, 360 (5th Cir. 2014).
[36] *In re Sims*, 994 F.2d 210, 221 (5th Cir. 1993).
[37] *Id.*
[38] R. Doc. 3 at 14.
[39] *See, e.g., In re TPG Troy, LLC,* 492 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2013) (collecting cases in which courts pointed to pending litigation in state court as evidence of a bona fide dispute under § 303(b)).
[40] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659 (5th Cir. 2014).
[41] This Court considered the record and materials reviewed by the bankruptcy court including, among other materials, the suit papers from the state court litigation, a collection of letters, emails and text messages evidencing the correspondence between Mendy and Steele and between Mendy and Steele's counsel related to the underlying dispute, as well as the state court lawsuit and the subject involuntary petition.
[42] *In re Hunt*, No. 18-7237, 2019 WL 651672, at *3 (E.D. La. Feb. 14, 2019).

between Mendy and Steele, involving what, if any, wages Mendy might be owed as well as Mendy's other potential rights under the contract, can certainly be described as a bona fide dispute, and this Court finds no clear error in the bankruptcy court's finding that there was a bona fide dispute that was fatal to Mendy's ability to show he could meet his standing burden under § 303(b). Indeed, contrary to Mendy's assertions, the bankruptcy court specifically sought to determine whether a bona fide dispute was present, and, in doing so, it looked carefully at whether there was an objective basis for a factual or legal dispute as to the validity of the alleged debt. The bankruptcy court specifically found that Mendy's claims in the state court litigation were part of the involuntary petition, and that these disputes arose from the contract between Mendy and Steele that had given rise to the state court litigation. Furthermore, the bankruptcy court correctly found that Mendy, as the petitioning creditor, had the burden of establishing a prima facie case that there was no bona fide dispute. Not only did Mendy fail in this regard, as the bankruptcy court correctly recognized, but Steele came forward with evidence that there was such a dispute, and the bankruptcy court, based on the record and evidence before it, found "[Steele] has shown that there is no genuine issue as to any material facts regarding whether the claims held by Mendy are subject to a bona fide dispute and that the involuntary dispute must be dismissed." [43]

Mendy also argues on appeal that the bankruptcy court failed to conduct an evidentiary hearing on Steele's motion to dismiss even though Steele, according to Mendy, failed to provide "any testimony or authenticated evidence in support of the Motion to Dismiss."[44] For the following reasons, this Court finds no error in the manner in which the bankruptcy court conducted the hearing on Steele's motion to dismiss. Steele's motion was scheduled for a hearing in accordance with the Local Rules of the United States Bankruptcy Court for the Eastern District of

---

[43] R. Doc. 3 at 14.
[44] R. Doc. 8 at 35.

Louisiana, and Mendy was given notice of the hearing date.[45] During the hearing, each side presented oral argument to the bankruptcy judge. Mr. Mendy argued on his own behalf, while Steele was represented by counsel.[46] After giving both sides an opportunity to argue, and having heard enough argument, the Court began to rule on Steele's motion. Mendy alleges it was at this point that the bankruptcy judge "cut [Mendy] off without letting him complete his testimony," and that "as a result of the court's interruption as well as unwillingness to allow [Steele] or [Mendy] to offer testimony, the court's understanding of the facts and issues were limited."[47] Mendy is incorrect. He was not testifying, and, in fact, at no time, either before or during the hearing, did Mendy object to the manner in which the hearing was being conducted or request the opportunity to present evidence, nor did Mendy ever seek to change the format of the hearing. If Mendy wanted to present testimony, it was his obligation to arrange for the testimony. Under the Bankruptcy Court's Local Rules, matters requiring the presentation of evidence or testimony, except by affidavit submitted seven days before the hearing, are required to be scheduled for a special setting by contacting chambers to arrange for a special setting.[48] Mendy made no such request before, or even during, the hearing, and a review of the transcript and record confirms this. Thus, Mendy cannot now be heard to complain about the manner in which the hearing was conducted or that the bankruptcy court should have allowed or listened to testimony when neither party sought to present testimony.[49] Indeed, a bankruptcy court need not conduct a hearing or

---

[45] R. Doc. 2-1 at 5.
[46] While he is no longer a licensed or practicing attorney, and was not an attorney at the time of the subject hearing, it is undisputed that Mr. Mendy was trained as a lawyer.
[47] R. Doc. 8 at 35.
[48] *See* Bankr. E.D. La. Local Rule 9013-1(G).
[49] *Rora LLC v. 404 E. 79th St. Lender LLC*, 630 B.R. 876, 889 (E.D.N.Y. 2021) ("Where an evidentiary hearing is not required and the appealing party fails to request an evidentiary hearing, the appealing party cannot be heard to complain about the lack of an evidentiary hearing.") (citations omitted).

7

require cross-examination or contravention of affidavits where not otherwise required by the rules.[50]

Mendy also contends, without any support, that the bankruptcy court erred in not allowing Mendy to compel discovery or otherwise permit discovery to be completed. Pretermitting whether Mendy raised and preserved this issue in the bankruptcy court, and that Mendy has also failed to explain how additional discovery would establish his standing to bring the involuntary petition, Rule 1013(a) of the Federal Rules of Bankruptcy Procedure dictates that a bankruptcy court should resolve the issues in a contested petition, at the earliest practical time, and promptly enter any appropriate order, including dismissal of the petition. Here, this Court can find no error in the bankruptcy court doing what the law requires, particularly when the burden of proof to show there was no bona fide dispute rested with Mendy.[51]

***Whether the bankruptcy court erred in awarding attorney's fees***

The bankruptcy court found that Mendy's action in filing the involuntary petition, something Mendy called "the nuclear option" during settlement discussions, "reek[ed] of bad faith,"[52] and it awarded attorney's fees and costs in the amount of $5,502.59.[53] "A bankruptcy court has discretion under 11 U.S.C. § 303(i)(1) to award costs and attorney's fees when it dismisses an involuntary petition without the consent of all the parties, and § 303(i)(2) allows the court to order proximate and punitive damages if it finds that the petitioner acted in bad faith."[54] Mendy contends the bankruptcy court erred in finding that Mendy's settlement communications were evidence of bad faith, and that the legal fees sought by Steele, and ultimately awarded by the

---

[50] *First Republicbank Dallas v. Gargyle Corp.*, 91 B.R. 398, 401 n.5 (N.D. Tex. 1988).
[51] *In re Hunt*, No. 18-7237, 2019 WL 651672, at *5–6 (E.D. La. Feb. 14, 2019).
[52] R. Doc. 3 at 16.
[53] R. Doc. 4.
[54] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 661 (5th Cir. 2014).

bankruptcy court, were excessive, and finally that the bankruptcy court erred in not offsetting the fees and costs it found Mendy owed Steele against the amounts Mendy claimed he was owed by Steele.

Steele provided the bankruptcy court with an email from Mendy, in which Mendy argued the state court case should be settled, and it if were not settled, he might file an involuntary bankruptcy proceeding as "the nuclear option," that would take resolution of the issues in the then-pending state court lawsuit out of the parties' hands and "into the hands of a bankruptcy judge and a bankruptcy trustee who [would] take over the assets and operations of the company."[55]

The bankruptcy court specifically found that "threatening to file a bankruptcy to compel a settlement" constituted bad faith.[56] Under the circumstances, this court does not find the bankruptcy court's decision to be clearly wrong or that it abused its discretion in awarding attorney's fees of $5,502.59. Based upon this Court's review of the materials the bankruptcy court considered in assessing the award of costs and fees, this Court finds no abuse of discretion. The sums awarded appear entirely reasonable, even modest, based upon the record in this case.

Finally, again citing no authority, Mendy contends the bankruptcy court should have offset the award of fees and costs against the sums he claims are owed by Steele. This Court finds no abuse of discretion in the bankruptcy court's award of attorney's fees and costs without such an offset, particularly in light of its having found that Mendy could not meet his burden of proving that there was no bona fide dispute regarding Steele's obligation, if any, to Mendy, as well as its finding of bad faith. By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power with the potential for abuse, but the risk of an award of fees and costs serves as a

---

[55] R. Doc. 2-1 at 11.
[56] R. Doc. 3 at 16.

9

potential deterrent of such abuse.[57] Indeed, to offset in a case such as this could serve to encourage the filing of bad faith involuntary proceedings, something this Court cannot condone or encourage.

## CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the bankruptcy court's judgments dismissing Mendy's involuntary petition[58] and awarding attorney's fees and costs[59] are AFFIRMED.

New Orleans, Louisiana, this 25th day of March 2025.

*[signature]*

DARREL JAMES PAPILLION
**UNITED STATES DISTRICT JUDGE**

---

[57] *See In re Diloreto*, 388 B.R. 637, 655 (Bankr. E.D. Pa. 2008), *aff'd*, 442 B.R. 373 (E.D. Pa. 2010) ("Involuntary petitions, even ones filed in good faith, can have significant negative effect upon the interests of the putative debtor, including requiring the putative debtor to incur significant counsel fees. Section 303(i) was intended to ameliorate those negative effects by imposing liability upon the unsuccessful petitioning creditor, and the allowance of a setoff right would severely weaken that statutory provision.").
[58] R. Doc. 2-1 at 187.
[59] R. Doc. 4.